# Third District Court of Appeal

## State of Florida

Opinion filed March 22, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-1367
Lower Tribunal No. 11-12182
_____

**Orlando Noa,**
Appellant,

vs.

**Florida Insurance Guaranty Association,**
Appellee.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Jose M. Rodriguez, Judge.

Alvarez, Carbonell, Feltman, & DaSilva and Paul B. Feltman, for appellant.

Conroy Simberg and Hinda Klein (Hollywood), for appellee.

Before SALTER, EMAS and FERNANDEZ, JJ.

SALTER, J.

Orlando Noa appeals a non-final order denying his motion to compel a second appraisal of an insured windstorm loss claim under a policy insuring his

home. The issue presented is whether any effects of "Ordinance and Law" costs were subsumed in the initial appraisal conducted as provided by the policy. We affirm the order below, concluding that Mr. Noa's post-appraisal submission of increased costs is not a legally sufficient basis for re-opening the existing appraisal or conducting a new one.

Loss and Appraisal

Mr. Noa obtained residential insurance coverage through First Home Insurance Company ("First Home"). In October 2005, with the policy in full force and effect, Hurricane Wilma damaged the residence. Mr. Noa submitted a claim to First Home, which assigned an adjuster to evaluate the loss. In December 2005, First Home advised Mr. Noa that the damages did not exceed the policy deductible of $4,392.00.

Over three years later, in August 2009, Mr. Noa submitted a second claim to First Home relating to the same residence, policy, and windstorm. This claim, detailed in a sworn statement and proof of loss form, was for $71,682.97, exceeding the deductible by $67,290.47. First Home rejected the claim and invoked the appraisal clause in the policy. As part of his second claim, Mr. Noa submitted a letter from a tile company reporting that the Old Havana tiles originally installed on the roof were no longer in stock and "have been out of circulation for a considerable time now," making a color match difficult.

2

Mr. Noa's appraiser, the insurer's appraiser, and an umpire selected by the party appraisers, each evaluated the loss. The umpire and the insurer's appraiser agreed on an actual cash value of the claim in April 2010, of $17,602.10.[1] That computation allowed $3,780.00 for the replacement of 120 roof tiles, $1,200.00 for repair of the underlayment beneath the affected area, and $4,360.00 for treatment of the entire roof after installation of the new tiles to provide a color match. The 120 tiles comprised approximately 3% of the 3,200 square foot roof. The appraisal stated that it did not appraise any allowance for the effects of law and ordinances. The insurer paid the appraisal amount, less any deductible and any prior payment.

Less than a month after the appraisal award was entered and First Home paid the award amount (less the deductible) to Mr. Noa, a roofing contractor selected by Mr. Noa submitted a permit application to repair 30% of the roof with "current leaking," reflecting a price of $8,700.00. The permit application was rejected by the building and zoning authority,[2] as Miami-Dade County's building code requires that not more than 25% of the total roof area can be repaired,

[1] Although the insured's appraiser disagreed with the appraisal award and declined to sign it, the appraisal clause in the insurance policy specified that the award would become effective if signed by any two of the party appraisers and the umpire.

[2] In submitting that permit application, the Miami-based, licensed roofer must have known, or in any event, should have known, that the application would be rejected based on longstanding Miami-Dade County building code requirements.

3

replaced, or recovered in any twelve month period unless the entire roofing system or roof section complies with the current code. Fla. Bldg. Code § 611.1.1 (2007); Miami-Dade County, Fla., Code § 8-2 (2001). The contractor then prepared, and Mr. Noa signed, a contract for the full roof for $26,000.00. Mr. Noa submitted the contract to First Home with a request to fund the additional amount required as a result of the ordinance requirement.

First Home denied the full-roof additional claim, and in 2011 Mr. Noa filed a circuit court lawsuit in an effort to recover the differential amount of that post-appraisal claim. Thereafter, First Home became insolvent, and the Florida Insurance Guaranty Association ("FIGA") was substituted as defendant in 2012. After various pretrial proceedings, the trial court denied FIGA's motion to re-open the existing appraisal (to demonstrate that the award included under 25% of the total roof area for repair), and the court denied Mr. Noa's motion for a new appraisal regarding his additional claim for an ordinance and law award. Mr. Noa's appeal followed.

<u>Analysis</u>

"Ordinance and Law" coverage provides additional reimbursement to the insured, in amounts and on other terms specified in the insurance policy, to cover "costs necessary to meet applicable laws and ordinances regulating the construction, use, or repair of any property or requiring the tearing down of any

4

property, including the costs of removing debris." § 627.7011(1)(b), Fla. Stat. (2011). The question before us is subject to de novo review, as it involves the interpretation of the appraisal and "Ordinance and Law" provisions of the policy.

While issues concerning coverage challenges are exclusively for the courts, the appraisers are charged with determining the amount of the loss when an insurer admits there is a covered loss and there is a disagreement regarding the amount of the loss. See Citizens Prop. Ins. Corp. v. Mango Hill Condo. Ass'n 12, Inc., 54 So. 3d 578, 581 (Fla. 3d DCA 2011). In order to perform competently as an appraiser for this purpose, and to be designated by a party or by other appraisers or the court (as an umpire), logic and common sense require that an appraiser must have experience in the estimation of materials and labor costs for the repair and replacement of damaged property. In the case of roof work, appraisers must consider the requirements of the applicable building codes in order to estimate the cost of repair or replacement. This is an area for professional construction industry expertise and should be "baked into" the appraisers' and umpire's computations, and not left open for a re-appraisal or for a determination by the court.

Whether a building code provision requires a particular standard for plywood decking, or the use of specified thicknesses of felt or shingles, or (as here) replacement of an entire roof if over 25% of the roof must be replaced, such provisions are established regulatory requirements known to, or knowable by,

5

construction professionals and to be taken into account in computing the cost of the work when they conduct their appraisal.[3] The appraisal provision in the present case sufficed to leave these issues to the appraisal panel, not the court.

This explains the notation on the appraisal award that "Law & Ordinance" was not appraised—the majority of the appraisal panel concluded that current building code requirements did not require replacement of the whole roof, and their estimation line items confirm an estimate of 3% of the roof area to be replaced, not 25% or more. The notation surely cannot mean that the appraisal is subject to circumvention a month later if the insured can just find a roofing contractor to sign a proposal stating that 30%, not 3%, of the roof needs replacement. If the appraisal award had concluded that the entire roof had to be replaced because the necessary re-roofing exceeded 25% of the area of the roof, then this additional cost would have been shown and the appraisal panel would have reported that ordinance and law costs were appraised and included.

To hold otherwise would allow the insured's post-appraisal roofing contractor to step into the adjustment process as a super-umpire whose opinion supersedes the appraisal and requires a new round of valuation estimates. In this case, such a process would occur against the backdrop that the original appraisal

---

[3] A different analysis could apply if a new, more onerous (i.e., more expensive) building code requirement was imposed after the appraisal but before the commencement of the repair work. That did not occur in the present case.

6

award was issued almost five years after the windstorm damage, primarily due to the delay by the homeowner in filing a supplemental claim (nearly four years after the damage occurred). If the insured intends to offer a roofer's professional opinion that the applicable building code will require replacement of the entire roof, not just 3% of the area of the roof, the appraisal process must surely be the time to offer that evidence—not as an afterthought on the heels of the appraisal.

The present case is distinguishable from Jossfolk v. United Property & Casualty Co., 110 So. 3d 110 (Fla. 4th DCA 2013), because in that case the insurer had not raised its "under 25%" roof replacement argument in its motion for summary judgment. Id. at 113. The present case only involves the denial of the insured's request for a second appraisal—not a summary judgment in favor of the insurer—on the grounds that the appraisal panel had previously considered and determined the percentage of replacement required. The present case is also distinguishable from Ceballo v. Citizens Property Insurance Corp., 967 So. 2d 811 (Fla. 2007), relied upon as "determinative" in Jossfolk, 110 So. 3d at 113. In Ceballo, the issue was whether Florida's Valued Policy Law (VPL)[4] required the insured to demonstrate an actual (incurred) loss before payment could be required for ordinance and laws coverage. The present case does not involve a total loss or

---

[4] The VPL, section 627.702, Florida Statutes (2016), requires an insurer to pay the face amount for which a covered property was insured if the property is a total loss as a result of a covered peril (with additional provisions not applicable here).

7

the VPL, and Mr. Noa and his appraiser had already submitted the costs of the full-roof repair they proposed to the first appraisal panel.

 Affirmed.